The panel has before it one case for oral argument and disposition, Eli Lilly v. Teva Pharma, 2009, appeal number 1071. It's the suggestion of the court that the court and counsel refrain from discussing material designated by either party as confidential and observing that restraint to the extent possible, the courtroom will not be cleared and the oral argument tape will be posted on the website in the normal course like every other case. Alright, well let's hear from Teva. Good morning. On behalf of my client, Teva Pharmaceuticals, I thank you for hearing this appeal so quickly. There are two issues before the court today. First, is there jurisdiction to hear this appeal? And to that, the answer is yes. The second is, did the district court properly extend the 30-month stay by four months? And to that, I argue the answer is no. The second issue raises an important question of statutory interpretation that looms over nearly all Hatch-Waxman litigations. Yet this issue has reached this court only once before squarely, and I believe that's because of litigants' misperception of the jurisdictional issue, which I'll address now. Appellate jurisdiction in this case is proper for two independent reasons. Operating through 1295, 1292C1 and the Collateral Order Doctrine both give this court the jurisdiction to hear this appeal. There's no serious dispute raised by the papers in this court that before the district court's order, Teva would have been on the market with Riloxifene nearly two months ago. Can you tell me why, in September of 2006, Judge Barker sets the trial for March 9, 2009, more than three years later and past the 30-month stay? Those were the dates that were suggested to the court by Lilly, Your Honor. Why would the trial date be set beyond the 30-month stay? That is what Lilly wanted. They felt that they needed that much time. Did you object? Yes, we did, Your Honor. If you look in the record... And what was the reason given for going beyond the 30-month stay at the time the judge set the trial? The judge felt that Lilly's expectation with respect to dates were more in line with her expectation of how patent litigations went before her court, and that Teva had suggested a less reasonable approach. In fact, our approach would have had trial conducted before the expiration of the 30-month stay. When did you propose? I don't remember. October. Thank you, Your Honor. And so we had attempted to have the trial before the 30-month stay, and Lilly had proposed the date that we have now, March 9. Does that date still stand? That date still stands, Your Honor. And so... What happens then? What's the significance of this hearing? If that trial is going to go ahead, is that trial moot if your drug goes on the market before? The trial is not moot, Your Honor. If, as Teva presently intends, it goes on the market with generic raloxifene, it would be doing so at risk. And what Lilly could and did do in this very case is file a motion for TRO and preliminary injunction, and then we're presented with the traditional factors that protect litigants in this situation. And in the order before the court, there's no bond. How long is the trial expected to take? The trial is expected to take two to three weeks, Your Honor. Teva has already conceded infringement of the method of use patents. We haven't conceded infringement of the particle size patents. These are the patents that Lilly raised for the first time in their first amended complaint. And so we're going to have a significant amount of trial on the invalidity of all seven patents and then a portion of trial on the infringement of the particle size patents, which weren't raised until far beyond the 45 days. Wouldn't it have been more logical for the trial judge to extend the stay, the injunction, whatever we want to call it, the timeout period, not to the start date set for the trial, but to the expected end of the trial, late March, end of March, instead of March 1st? Well, if I follow your reasoning, Your Honor, that assumes that it was appropriate in the first place to have granted the extension of the stay and enjoined Teva, but let me walk down that path. That is exactly what Lilly asked for. Lilly asked for six months additional stay, which would have taken us out about two months past the start of trial. And so that is what they were looking for here. The judge found that four months was appropriate. There's no basis in the record for four months. In fact, Teva raised in its reply brief, I'm sorry, in its opposition brief, that the only evidence before us and the court was that it had taken Lilly nine days to do a particle size analysis in the past. Lilly responded merely that Teva was being cynical in suggesting that it could do an infringement analysis in nine days. It's pretty much that simple, Your Honors. They take the same thing. You're not going to ask us to try to decide as an appellate court how many days of extended discovery were needed for this or that or some other particular new issue in the case, I hope. I don't think we need to reach that, Your Honor. I'm merely addressing your point that perhaps it would have been more intelligent if the judge had the right to extend it at all, to extend it past the trial date. Teva submits that there was no basis at all. The statute gives the judge the discretion to extend beyond the 30-month stay in the event of unreasonable delay. Hasn't she made findings of that nature? In light of the fact that Teva has recast this product more than 18 months after it provided an original sample and eight months before trial, blah, blah, blah, we find that. The reference, Your Honor, to recasting the product is a direct... Isn't that a finding? Is that finding sufficient to show unreasonable delay and invoke the trial judge's discretion to go beyond the 30-month limit? No. We believe, Your Honor, that that violates the ruling in Andrix v. BioVail where this court held that you cannot hold the litigants responsible for something that happens before the FDA. In that case, BioVail... I didn't read her as relying on anything before the FDA. I read her order as indicating that the issues on trial had been expanded, that discovery had to correspondingly be expanded, and that the expansion of discovery justified extending the 30 months to 34 months or whatever the exact number was. Well, the court spoke in terms of recasting the product at the 11th hour. That's a reference to the July 8th amendment to the FDA. In that amendment, Teva... But nobody's suggesting that there's something illegal or illicit about whatever you chose to do with the FDA or inquiring into what the FDA might do. As I understand it, the trial schedule changed because the trial issues changed because of steps that you took. Well, in fact, the trial schedule didn't change at all. The discovery schedule that was the prelude to the trial and that, in effect, set the trial. The discovery schedule, in fact, did change. The magistrate gave Lilly an additional amount of time to file its expert reports on particle size infringement. But then I don't understand why you don't agree with the suggestion that I thought was implicit in Judge Rader's question that why doesn't that need for expanded discovery invoke the discretionary power of the district judge under the statute to extend the 30 months by some reasonable increment? Well, the decision has to be based on whether or not we've reasonably cooperated. I think part of the issue is what reasonable cooperation is. It's not a Rule 37 standard. Congress knew what Rule 37 of the Federal Rules of Civil Procedure stood for. I don't see any issue here of sanctions or punishment of anybody. Well, Your Honor, the question is whether or not we reasonably cooperated in view of the attendant circumstances. What I would argue ANDRAC stands for in its logical conclusion is that things happen before the FDA, and the litigants then have to do what they can to reasonably cooperate to make sure that the impact on the litigation is minimized. As part of your answer to Judge Roussel, something that I think I recall you suggesting in your brief was the fact that the trial was never postponed therefore necessarily means that there wasn't a basis for extending the 30-month trigger. Is that your view? I believe that that's part of the answer, Judge Prost, but I think the rest of the answer is that faced with the fact that Teva needed to submit this amendment on July 8th, Teva in this litigation reasonably cooperated with Lilly to minimize the impact on the action, and in fact Teva succeeded in doing so because the trial date didn't have to be moved. But let's assume hypothetically we have the failure of this situation, which is the trial date isn't moved, but there is some finding by the trial court that Teva could have disclosed this information sooner than it did. Would that be a sufficient basis to conclude that there's a failure to reasonably cooperate and therefore extend the trigger? If the trial court found that Teva could have disclosed it earlier and that it was unreasonable to do so, it was a failure to cooperate in expediting the litigation, then yes, it would be within the trial court's discretion to do so. Even in the absence, even though there's no impact on the actual trial date or the extent to which the litigation is moving forward? I believe that's correct, Your Honor. But that's not what we have here. In fact, the trial court at the first page of its order, A1, footnote 1, says that it refuses to engage in those issues. It does not want to reach the disputed issues of fact. And it says that it's enough that Teva submitted the amendment, i.e., recast its product. We had to recast our product in that amendment if we take that at its basis. Teva disputes, by the way, that we recast the product. In fact, we only modified a quality assurance parameter and a testing. There was no modification of the product. Did the district judge make any findings in that regard? No. She made no findings. Do you want to save the rest of your rebuttal time? Unless the court has burning questions, I'd like to save my rebuttal time that remains. Very well. Thank you. Mr. Lipsy. I'll try to address the question about the timing of the trial since that's on people's minds. When the Teva case was initiated, Teva was a second filer. We were already in litigation with Barr. Teva could not go on the market until Barr marketed. We set that trial date with Teva, recognizing they were a second filer, recognizing that we had to deal with Barr in the first instance, hoping that the Barr trial would resolve all of the matters. That changed in February of 2008 when, unbeknownst to us, Teva and Barr entered into an agreement whereby Barr agreed to selectively waive its exclusivity in favor of Teva, whereby Teva now has the right to the 180 days of exclusivity. That's one of the reasons we contend there isn't any irreparable injury here. That's why the trial was set when it was, and it made perfect sense to do so at the time. I think the court has correctly understood our position that if it reaches the merits, the decision should be affirmed. There simply isn't an abuse of discretion to extend it by less than four months when the record showed that Teva had been planning since the fall of 2007 to change its product. We had, in the course of doing that, withheld 27,000 pages of documents squarely called for by our discovery request, told Lilly about it only in July of 2007. We don't have a motion to compel on review here. Whatever they may have withheld or didn't or had a good reason or didn't, none of that seems to be before us. None of it should be. I'm simply pointing out that on the record before us there is ample ground to conclude that there was a failure reasonably to cooperate and that it wasn't an abuse of discretion. The failure being that they could have introduced this new issue earlier in the life of the litigation? Correct. But the district court didn't make a finding in that regard, did she? She did. She said that they disclosed the information to us 18 months after they gave us the original sample and only eight months before the trial, and that her conclusion was that the circumstances under which they did so didn't give us a reasonable opportunity to test and evaluate. But that's different than what I'm asking. I mean, that suggests that they could have done it. They could have and should have done it before they did it. That's what you were suggesting, I think, that they didn't act promptly. That's what your brief says. And I want to see where the judge lays out what was done, but where does she conclude that that was not prompt, that they didn't act within some duty they had in a timely fashion? The essence of the motion was that there was a failure reasonably to cooperate. That was the relief we asked for. That is why Teva said the motion shouldn't be granted. Yeah, but the essence of her decision seems to be, in part, that she's not going to make any findings of that with respect to the conduct and she was going to rely exclusively on this one thing, which doesn't implicate in my reading. If I may, the statement in Teva's brief saying she wasn't going to rely on any of the dispute statements, that was not a general statement. That statement referred to statements made in Lilly's reply brief. There were two of them that were mentioned in the brief she refers to. One related to what Teva had agreed to produce and the other related to the degree of Teva's control over its supplier. That's all that footnote is relating to. She is not saying I'm not going to rely on any of the disputed facts. She laid out what the dispute was. Right. She's saying one party says this and one party says that, and I'm looking at what she says, though. What she said was that the timing of their disclosure of this material to us did not give us a reasonable amount of time to deal with it in the course of time. Yeah, but she's looking at the time gap between when the material was turned over, I guess, in the summer of 2008 and the scheduled trial date in March of 2009. But that's not the same thing as saying that Teva should have introduced the new material in July of 2007. If they introduced it as soon as they could, then where is their failure to cooperate? If they introduced it 18 months too late, then it's a different story. There are two components to the problem. One is we contend that the record is abundantly clear that they could have and should have produced it earlier in response to our requests and that the court can affirm the ruling below on that ground. The second is this change was entirely within their control, and while we don't doubt their right to make that change, if they choose to make it on the eve of the close of fact discovery, that is necessarily a failure reasonably to cooperate because it throws into a cocked hat the entire schedule. What was the date the discovery was to end? August 11, Your Honor. And July, a month earlier roughly, was when the new issues came to the fore? Correct. Even though they were in documents going back into October and November of 2007. That was exactly the problem. It sounds like you're asking us to make the finding that Judge Prost suggests the district judge here didn't make that they stalled for a year before they introduced the new issue. There are two really independent bases for sustaining the judgment below. That would be one of them. But that would require us to make a fact finding she didn't make, would it not? Personally, I think it's implicit in the order, but whether implicit or not. Can she make this implicitly, or does the statute require an explicit finding of unreasonable delay? The statute simply requires that the motion cannot be granted unless there's a failure reasonably to cooperate. Unless there's a failure, and so does that require an explicit finding? Can it be hidden in between the lines? It was hardly hidden in between the lines, Your Honor. She laid out in detail the dispute and exactly what the problem was. It's crystal clear she understood that the only way she could grant our motion was if there was a failure reasonably to cooperate, and she granted it. And she clearly perceived that on that record there was a failure reasonably to cooperate, and there are two different ways to look at it in this court. One is the way that has been suggested here, which is regardless of whether they were good guys or bad guys in making the change, they chose to make the change at a point in time when it bolloxed up the schedule of discovery for completion of the trial, and that was a failure reasonably to cooperate and justified exercise of discretion to extend the state. We also contend that the record is abundantly clear that the material could have and should have been given earlier. But let's assume, I mean, you make the argument in your brief about how we affirm judgments and not opinions, but you also argue the standard of review here is an abuse of discretion. So are you suggesting if we disagree with your reading of her opinion we ought to say that even in the absence of the district court making a finding that they failed to reasonably cooperate, we should conclude that she did not abuse her discretion but make that finding on our own? No, I'm suggesting that based on the record as it's presented to this court, this court can conclude that based on that record, the conclusion that it was a failure reasonably to cooperate is not an abuse of discretion. Whether the court might have reached a different ruling on its own or not, the decision that the trial court came to under these circumstances was not an abuse of discretion. Mr. Lipsy, perhaps one reading of the magic language from the statute would restrict failures to cooperate to things like not making discovery disclosures within the deadline ordered by the court. That happened here. Well, I know it happened here in two or three instances in the late summer and early fall, but it's not clear that it justifies the length of the extension. But what I'm wondering is why you think, you must think so, why you think that that sort of interpretation, in other words, if the Congress simply wanted to guarantee that everybody would have lots of time, instead of talking about failure to cooperate, they could have just said if more time is needed, the judge can extend the time. But when they use the phrase failure to cooperate, it seems to suggest a false standard, that somebody did something improper, somebody reneged on a duty or missed a deadline or made some missteps. And you obviously seem to think that the phrase ought to be construed quite to the contrary, but I'm not sure why. And I'd like to hear your reason. Certainly a failure to do what ought to have been done is a failure reasonably to cooperate, and we believe this record amply demonstrates that. Is that an unreasonable delay? That's the statutory standard. The standard is failure reasonably to cooperate in expediting the action, the action, not a claim in the action, the action. And as all the issues that are legitimately before the court proceed to trial, they all must be prepared for trial and be ready to go and be tried, or else the action is not proceeding expeditiously to resolution. And anything that is done that interferes with that unreasonably is a grounds for the court exercising its discretion to extend the stay. And here, wholly aside from the discovery abuses, which we think are ample in the record here, wholly aside from that, the decision to make this change at the point of time when they did, when discovery was coming to a close and we could not cope with it within the schedule, and where we are now having fact discovery and expert discovery and infringement all piled up on top of the regular schedule, that has interfered with the expeditions to trial. Why does this make a difference? Let them go on the market, and if they're wrong, they're going to pay you amply in damages down the line. If they're right, the public is served by having them on the market sooner. So where's the harm here? If they go on the market, they are going to irreparably injure Lilly, particularly since we contend that they're not going to... How are they going to irreparably harm you if you win your trial and they have to pay you damages which may be even beyond damages? If they openly opted to enter the marketplace. The market for our product will have in the interim been destroyed, and it is likely to be... And they'll have to compensate you for that, right? Many of those things are extraordinarily difficult to compensate in money damages. They are uncertain. They have to deal with the relationships with suppliers, the ability to re-raise prices once the price has been dropped. Sounds to me like a preliminary injunction motion. Well, you asked me the question. But that's different than where we're at now. This is not a preliminary injunction motion. That's exactly the point. So it seems to me like you need to make those motions to a different court at a different time. No, I was just answering a question. I don't think the question of irreparable injury really factors in here other than that you asked me what would happen. No, and I'm suggesting that in the posture we're at now, I can't see how you suffer by allowing them on the market. Where we suffer is in connection with the expeditious progress of this litigation to trial. We spent four months trying to figure out... That's going to happen on March 9th regardless, right? I mean, Your Honor, the statute doesn't require an extension of the trial date. We would have loved one. There's no place to extend it to, Your Honor. We have another trial against another Teva subsidiary scheduled before Judge Barker in July. Judge Barker goes on vacation in August. We'd be into next fall if we tried to move this date. There isn't any place to put it. Let me piggybacking on Judge Rader's point to the statute. So tell me why you think I'm wrong. I'm assuming you'll think I'm wrong. It seems to me I read the statute in context, this requirement in context. And in Hatch-Waxman, there are two triggers for a generic, arguably, going on the market. One is the judgment, and the alternative is the 30-month trigger. And it seems to me that the purpose of this exception to the 30-month is to prevent parties from manipulating which of those triggers goes first. And in this case, regardless of the delay by either party, the stay as Judge Rader started the questioning in this case, the stay was set to end before the trial began. So how in this case does that exception even apply? I'm having trouble with that. The stay was set to end before that 30-month stay was to be over. It was not that the trial was set to deal with Barr, who had to have its issues decided before Teva could go on the market at the time that the schedule was laid out. But do you understand the point I'm making about the statute, that it seems to me that this exception applies so that parties can't manipulate which of those two triggers, the 30-month or the judgment, occurs first or later or last? Am I wrong about that? I think that's incorrect. That 30-month period was a compromise at the time of the legislation, and I know Judge Rader knows more about this than all of us. It was a compromise. There was some thought about what that had to be, and the compromise was, okay, we're going to set it at 30 months, but if somebody fails to reasonably cooperate, either way we're going to give the trial judge the discretion to decide when it ends. And that's the provision we're talking about. And this trial judge said, look, you came to me one month before the close of discovery, and you changed the thing that the lawsuit is all about, and you didn't make timely disclosure in accordance with Magistrate Stinson's order of the things he had to give, and indeed until December 5th of last year they had not produced a critical sample. Do you think the judge, in addition to making a finding of a failure to reasonably cooperate, has to make some sort of finding to associate the amount of time she's extending the 30-month trigger to the failure to cooperate? Isn't she also required to explain the length, the duration? I don't think she's required to do that if on the record before the court, as it's amply laid out in her opinion, if in the record before the court the time that she's picked does not appear to be an abuse of discretion. Here we contended we had originally had in the case management plan about 20 months between the time we got the sample and the time we had to put our expert reports in to do all the discovery about it and fashion our case, and now we've got literally it's all going on at the same time. I think you answered the question. I would like to call to the Court's attention one case not cited in our brief, which is Cunningham v. Hamilton County of Ohio. Send us a letter, please. Okay. And also say the same thing, one other case. All right. Rebuttal. Thank you, Your Honors. I'd first like to address the standard of review, which we didn't get to address in my first time up here. Teva believes that the standard here is de novo because what we're talking about is statutory interpretation. In fact, a large portion of the conversation What's your interpretation? Our interpretation is that the standard is reasonable cooperation in expediting the action. That is not, the judge made no point That's just saying the same words in the statute. What does reasonable cooperation mean? How should we conclude? Mr. Lipsky refers to a case against another Teva subsidiary where Judge Barker also ruled on a 30-month stay issue. I'm asking you, what's your definition of the phrase? My definition of the phrase is What's the definition or do you think we should adopt? Is that a party did something that was frivolous or unfounded to a point as to be viewed as dilatory, obstructive, uncooperative, delaying tactic that warrants an exception to the statutory requirement and that that should be proved by convincing evidence. As Judge Barker says in her C-Corp decision from June the case that Mr. Lipsky is referring to for the exception not to overrun the rule there has to be something convincing here. There has to be some kind of dilatory motive, some kind of foot dragging and that's not what happened here with Teva. Motive has to be found? It's going to be difficult for a court to find motive, Your Honor. That's not what I'm suggesting. But there are certainly attended circumstances and circumstantial evidence from which you can draw that there is no motive to be dilatory or drag your feet. As the court found here in its work... Why couldn't the standard be lack of diligence rather than evil motive? Well, I guess the standard could be lack of diligence and if that's what the court decides and gives guidance to the district court then I think that would be a valuable lesson to learn from this appeal. But what we understood and I believe what most Hatch-Waxman litigants understand is that there needs to be some kind of clear and convincing showing that the party was doing something... Where do you get clear and convincing versus the normal burden of preponderance? Well, I get clear and convincing... It's mentioned either in the statute or in some case law. As Judge Barker points out in a prior order, Your Honor, she says that if the statutory time limit of 30 months is to mean something, in order to construe it properly, the court must refrain from allowing exceptions and extensions or from disregarding it entirely without a compelling reason to do so. So you're saying compelling reason translates into the evidentiary burden of clear and convincing. This is what Judge Barker herself said in June. In June in a different case versus Lilly in another type of subsidiary, she said that clear and convincing evidence was required, otherwise... Time is short, so I don't want to burn up your remaining time. I want to address the last part of the statutory interpretation, and that is expediting the action. The action here relates to the portion of the statute that says the case that's filed within 45 days of the notice. Here, Lilly only filed a case on the method of use patents, which are clearly not impacted by whatever you want to call Teva's amendment from July of 2008. That could only impact the particle-sized patents. And Lilly's only argument to that is that because all of our patents were in the same notice letter, because they filed the first action, it necessarily covers all of the patents, even though they did not sue Teva on the three particle-sized patents. And I would submit that that puts form over substance. Is Lilly suggesting because there were seven patents listed in the Orange Book, in fact, there were more, which they've given us a covenant not to sue on now, but are they suggesting that I needed to send seven separate notice letters so that then they were at peril of deciding how to manage the 30-month stay? Any further points? I think not. Yes, Your Honor. 19 seconds, so you have to speak first. Thank you. The point on irreparable harm is exactly the point that Judge Rader made. In fact, there was a motion for preliminary injunction pending, which Judge Barker found was mooted by her decision on the statutory stay. In fact, that is the proper vehicle, the vehicle that we use in all cases, and it would have given Teva a bond that they could look to when we ultimately succeed on the merits of this case. All right. Thank you for your time. Thank you both. We'll take the appeal under advice. All rise. The honorable court is adjourned from day to day.